IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
FILED
IN OPEN COURT

APR 2   2011

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No.: 1:11-CR-187 |
| | ) | |
| v. | ) | Count One:  Continuing Financial Crimes |
| | ) | Enterprise |
| TOBECHI ONWUHARA, | ) | (18 U.S.C. § 225) |
| | ) | |
| Defendant. | ) | Count Two:  Conspiracy to Commit Bank |
| | ) | Fraud |
| | ) | (18 U.S.C. § 1349) |
| | ) | |
| | ) | Counts Three – Five:  Bank Fraud |
| | ) | (18 U.S.C. § 1344, 2) |
| | ) | |
| | ) | Counts Six – Eight:  Aggravated Identity |
| | ) | Theft |
| | ) | (18 U.S.C. § 1028A, 2) |
| | ) | |
| | ) | Counts Nine – Twelve:  Wire Fraud |
| | ) | (18 U.S.C. § 1343, 2) |
| | ) | |
| | ) | Count Thirteen: Money Laundering |
| | ) | (18 U.S.C. § 1956(a)(2)(B)(i), 2) |
| | ) | |
| | ) | Count Fourteen:  Conspiracy to Launder |
| | ) | Monetary Instruments |
| | ) | (18 U.S.C. § 1956(h)) |
| | ) | |
| | ) | Counts Fifteen – Sixteen:  Computer Fraud |
| | ) | (18 U.S.C. § 1030(a)(4), 2) |
| | ) | |
| | ) | Forfeiture Notice: |
| | ) | 18 U.S.C. § 982(a)(2)(A) |
| | ) | (Criminal Forfeiture) |
| | ) | |
| | ) | |

## INDICTMENT

April 2011 Term – At Alexandria

## INTRODUCTION

THE GRAND JURY CHARGES THAT:

At all times relevant to the Indictment:

1.      United States Senate Federal Credit Union ("USSFCU") and State Department Federal Credit Union ("SDFCU") were "Financial Institutions" as defined by Title 18, United States Code, Section 20, located in Alexandria, Virginia, which is in the Eastern District of Virginia.

2.      First Technology Credit Union ("FTCU") was a ""Financial Institution" as defined by Title 18, United States Code, Section 20, located in Beaverton, Oregon.

3.      Defendant TOBECHI ONWUHARA ("ONWUHARA") resided in the Dallas, Texas and Miami, Florida areas.

4.      PRECIOUS MATTHEWS ("MATTHEWS") resided in Miami, Florida. MATTHEWS pled guilty to Conspiracy to Commit Bank Fraud on November 19, 2008.

5.      ABEL NNABUE ("NNABUE") resided in Dallas, Texas.  NNABUE pled guilty to Conspiracy to Commit Bank Fraud on October 17, 2008.

6.      HENRY OBILO ("OBILO") resided in Miami, Florida.  OBILO was convicted of Conspiracy to Commit Bank Fraud on April 9, 2009.

7.      EZENWA ONYEDEBELU ("ONYEDEBELU") resided in Dallas, Texas. ONYEDEBELU pled guilty to Conspiracy to Commit Bank Fraud on November 20, 2008.

8.      DANIEL ORJINTA ("ORJINTA") resided in or around Lagos, Nigeria. ORJINTA pled guilty to Conspiracy to Commit Bank Fraud on December 2, 2008.

9.      The above introductory allegations are re-alleged and incorporated in each count of this Indictment as though fully set out in each count.

2

Count One
(Continuing Financial Crimes Enterprise)

## I.    Introduction

10.    Defendant ONWUHARA organized, managed, and supervised a group of at least four previously-indicted and unindicted co-conspirators whose identities are known and unknown to the Grand Jury, within a twenty-four month period who engaged in a multi-national scheme designed to defraud financial institutions by stealing the identities of U.S. account holders of home equity lines of credit ("HELOCs"), and using those stolen identities to execute and attempt to execute a series of wire transfers of funds totaling more than $5 million from the victims' HELOC accounts and into bank accounts controlled by co-conspirators without the knowledge or consent of the true account holders.

## II.    The Enterprise and Its Objects

11.    Beginning no later than May 2007 and continuing through at least in or about August 1, 2008, in the Eastern District of Virginia and elsewhere, Defendant ONWUHARA unlawfully and willfully organized, managed, and supervised a series of violations under section 1344 of Title 18 of the United States Code, committed by at least four persons working in concert and received $5,000,000 or more in gross receipts from such enterprise during any 24-month period in violation of Title 18, United States Code, Section 225 (Continuing Financial Crimes Enterprise).

## III.    Manner and Means of the Enterprise

12.    It was part of the enterprise that ONWUHARA and other co-conspirators carried out their fraudulent scheme by first identifying individuals who held HELOC accounts. To identify potential victims, Defendants ONWUHARA, ONYEDEBELU, NNABUE, and other unindicted and previously-indicted co-conspirators, obtained lists of mortgage and HELOC

3

account holders from direct marketing services, including ListSource™, which provides sales-lead lists for mortgage and home equity financial products.  Defendants and other previously-indicted and unindicted co-conspirators obtained personal identifying information, including social security numbers, password clue information, and signature exemplars for victims from a variety of sources, including online sources, and through pre-textual calls to financial institutions, utilities, and account holders.

13.    It was a further part of the enterprise that, once provided with a list of potential target HELOC account holders, one or more co-conspirators obtained unauthorized access to victim HELOC account holders' credit reports from the web site www.AnnualCreditReport.com. One or more co-conspirators would use pre-paid cellular broadband Internet access cards when obtaining unauthorized access to victim account holders' credit reports.  Once they accessed a target account holder's credit report, one or more co-conspirators would harvest details about a target account holder's loan balances and other financial and personal information, which they would use to impersonate account holders when calling victim financial institutions.

14.    It was a further part of the enterprise that ONWUHARA, MATTHEWS, OBILO, ONYEDEBELU, and other previously-indicted and unindicted co-conspirators called customer service contacts at target financial institutions and impersonated the targeted individual HELOC account holders.  To create the false appearance that the calls originated from HELOC account holders, the co-conspirators would create and use accounts with a caller ID falsification service known as "SpoofCard."  To use SpoofCard's caller ID spoofing features, the co-conspirators would call SpoofCard's toll-free access number, enter an account PIN and would then enter the destination phone number, followed by the number the co-conspirator wished to have appear in the financial institution's caller ID display.

4

15.     It was a further part of the enterprise that one or more co-conspirators would use SpoofCard's voice masking features.  These features allowed SpoofCard account holders to change the sound of their voices, including by making male voices appear female, and vice versa.

16.     It was a further part of the enterprise that, before calling a victim financial institution, one or more co-conspirators would sometimes call the targeted HELOC account holder's phone company and, while impersonating the account holder, use a pretext to have the phone company forward the account holder's home phone number temporarily to a pre-paid cell phone in the possession of one of the co-conspirators.  This would ensure that, if the targeted financial institution needed to call its account holder back for some reason while the fraudulent wire transfer was pending, the financial institution would reach the co-conspirator, and not the actual account holder.

17.     It was a further part of the enterprise that, when calling financial institutions, the co-conspirators would provide personal-identifying information of the account holder victims in order to gain fraudulent access to the accounts.  Once the co-conspirator had gained access to the account, he or she would request the target account holder's HELOC account balance.  If substantial funds were available in the HELOC account, the co-conspirator would request that a wire transfer form be sent to a fax number or e-mail account controlled by a co-conspirator.

18.     It was a further part of the enterprise that co-conspirators would sometimes gain access to victims' online account using pre-paid, cellular broadband Internet access cards in order to check balances or move money between HELOC accounts and checking or savings accounts from which an international wire-transfer could be initiated.

19.     It was a further part of the enterprise that one or more co-conspirators established and accessed free web-based e-mail accounts using pre-paid, cellular broadband Internet access

cards in order to receive wire transfer request forms and to communicate with other members of the conspiracy regarding data about potential victims. One or more co-conspirators also used these email accounts to share target victim information.

20.     It was a further part of the enterprise that one or more co-conspirators would obtain copies of HELOC account holders' signatures from publicly-available property-recordation documents. The co-conspirators would use these signatures as exemplars when forging account holders' signatures on the wire transfer request form or the co-conspirators would cut-and-paste the scanned signatures onto the forms.

21.     It was a further part of the enterprise that one or more of the co-conspirators would fax the completed wire transfer request back to the victim financial institution, requesting that funds from the HELOC account be wired to an overseas or U.S.-based bank account controlled by other co-conspirators. On other occasions, co-conspirators would move the victim account holder's funds from the victim's HELOC account into the victim's savings or checking account before initiating the wire transfer.

22.     It was a further part of the enterprise that the co-conspirators who controlled the accounts into which HELOC funds were wired would keep a percentage of the fraudulently-obtained proceeds and then cause the remainder of the proceeds to be transferred to bank accounts of ONWUHARA, MATTHEWS, OBILO, ORJINTA, and other previously indicted and unindicted co-conspirators in the United States and Nigeria.

23.     It was a further part of the conspiracy that on or about May 8, 2008, Defendant ONWUHARA opened a corporate bank account in the name of SWAT CONSTRUCTION LIMITED with Zenith Bank in Lagos, Nigeria, which was used to receive proceeds obtained from the fraudulent scheme.

6

## IV.  Overt Acts in Furtherance

24.     In furtherance of the above Enterprise, and in order to effect the objects thereof, the following overt acts, among others, were committed by Defendants and others within the Eastern District of Virginia and elsewhere:

25.     On or about November 27, 2007, ONWUHARA, placed a call to First Technology Credit Union ("FTCU") and while impersonating FTCU account holder M.C. caused $187,220.00 to be transferred from M.C.'s HELOC account into M.C.'s savings account, without M.C.'s knowledge or authorization.  ONWUHARA then caused FTCU to wire $94,000.00 from M.C.'s savings account into a SunTrust Bank account in Virginia Beach, Virginia, within in the Eastern District of Virginia, without M.C.'s knowledge or authorization.

26.     On or about December 7, 2007, ONWUHARA, impersonating R.S., the holder of a HELOC account with United States Senate Federal Credit Union ("USSFCU"), called USSFCU's customer support in Alexandria, Virginia, within the Eastern District of Virginia, provided R.S.'s personal account information, and fraudulently caused USSFCU to execute a wire transfer in the amount of $280,000.00 dollars from R.S.'s HELOC account into R.S.'s USSFCU checking account.  ONWUHARA then logged into R.S.'s online USSFCU account and initiated the wire transfer of $280,000.00 into a co-conspirator's bank account in Korea, without R.S.'s knowledge or authorization.

27.     On or about December 19, 2007, ONWUHARA called SDFCU's member services department in Alexandria, Virginia, within the Eastern District of Virginia, and impersonated State Department Federal Credit Union ("SDFCU") account holder J.W.  During that call, ONWUHARA caused SDFCU to transfer $61,000.00 from J.W.'s HELOC account into J.W.'s SDFCU checking account without J.W.'s knowledge or authorization.  ONWUHARA

7

then attempted to execute a wire transfer of $61,000.00 from J.W.'s SDFCU checking account

into Branch Banking and Trust bank account ending in 7582 located in Arlington, Virginia,

within the Eastern District of Virginia, without J.W.'s knowledge or authorization.

      28.    Over the course of approximately 14 months, ONWUHARA and other

previously-indicted and unindicted co-conspirators attempted to steal more than $38 million as

part of this enterprise.  Over that period, ONWUHARA and other previously-indicted and

unindicted co-conspirators successfully stole more than $13 million.

      (All in violation of Title 18 United States Code, Section 225).

8

<u>Count Two</u>
(Conspiracy to Commit Bank Fraud)

29.      Between in or about May 2007 and on or about August 1, 2008, within the Eastern

District of Virginia and elsewhere, Defendant ONWUHARA conspired with ONYEDEBELU,

MATTHEWS, NNABUE, OBILO, ORJINTA and other previously-indicted and unindicted co-

conspirators to knowingly execute and attempt to execute the scheme and artifice to defraud

federally-protected credit unions and other financial institutions, as described in Count One,

paragraphs 10 through 28, which are realleged and incorporated as if fully set forth in this Count.

30.      To wit: on or about December 7, 2008, ONWUHARA called USSFCU and, while

impersonating R.S., the holder of a HELOC account with USSFCU, fraudulently caused

USSFCU to execute a wire transfer in the amount of $280,000.00 dollars from R.S.'s account to

an account ending in 1001 at Woori Bank in Korea without R.S.'s knowledge or authorization.

ONWUHARA had USSFCU send the transfer authorization form to an email account controlled

by NNABUE, who filled it out and returned it to USSFCU.

31.      The money that was transferred to the Woori Bank in Korea was withdrawn by a

money-mule who worked for the conspiracy.  The money mule took a cut and transferred the rest

to another member of the conspiracy in Indonesia, who in turn took a cut and transferred the

remainder to ORJINTA and ONWUHARA.  ORJINTA gave $100,000 to NNABUE in Nigeria

in or about March 2008.

(All in violation of Title 18, United States Code, Sections 1349).

9

<u>Count Three</u>
(Bank Fraud)

32.     On or about November 27, 2007, within the Eastern District of Virginia and

elsewhere, the defendant ONWUHARA knowingly executed and attempted to execute the

scheme and artifice to defraud FTCU, as described in Count One, paragraph 25, which is

realleged and incorporated as if fully set forth in this Count, by calling FTCU, and, while

impersonating FTCU account holder M.C., causing $187,220.00 to be transferred from M.C.'s

HELOC account into M.C.'s savings account, without M.C.'s knowledge or authorization.

While continuing to impersonate M.C., ONWUHARA caused FTCU to execute a wire transfer

of $94,000.00 from M.C.'s savings account, without M.C.'s knowledge or authorization, into a

SunTrust Bank account in Virginia Beach, Virginia, within the Eastern District of Virginia.

    (All in violation of Title 18, United States Code, Sections 1344 and 2).

10

Count Four
(Bank Fraud)

33.     On or about December 7, 2007, within the Eastern District of Virginia and elsewhere, the defendant ONWUHARA knowingly executed and attempted to execute the scheme and artifice to defraud USSFCU, as described in Count Two, paragraphs 29 through 31, which are realleged and incorporated as if fully set forth in this Count, by calling USSFCU and, while impersonating R.S., the holder of a HELOC account with USSFCU, fraudulently causing USSFCU to execute a wire transfer in the amount of $280,000.00 dollars from R.S.'s account to an account ending in 1001 at Woori Bank in Korea without R.S.'s knowledge or authorization.

        (All in violation of Title 18, United States Code, Sections 1344 and 2).

11

<u>Count Five</u>
(Bank Fraud)

34.    On or about December 16, 2007, within the Eastern District of Virginia and
elsewhere, the defendant ONWUHARA knowingly executed and attempted to execute the
scheme and artifice to defraud SDFCU, as described in Count One, paragraph 27, which is
realleged and incorporated as if fully set forth in this Count, by calling SDFCU, and, while
impersonating SDFCU account holder J.W., causing $61,000.00 to be transferred from J.W.'s
checking account to a BB&T bank account ending in 7582 in Arlington, Virginia, within the
Eastern District of Virginia, without J.W.'s knowledge or authorization.

(All in violation of Title 18, United States Code, Sections 1344 and 2).

12

<u>Count Six</u>
(Aggravated Identity Theft)

    35.    On or about November 27, 2008, in the Eastern District of Virginia, the defendant ONWUHARA during and in relation to a violation of 18 United States Code, Section 1344, as alleged in Count 3 did knowingly use, without lawful authority, a means of identification of another person, M.C., to wit, M.C.'s name and social security number.

    (All in violation of Title 18, United States Code, Sections 1028A and 2).

13

Count Seven
(Aggravated Identity Theft)

36.     On or about December 7, 2007, in the Eastern District of Virginia, the defendant

ONWUHARA during and in relation to a violation of 18 United States Code, Section 1344, as

alleged in Count 4 did knowingly use, without lawful authority, a means of identification of

another person, R.S., to wit, R.S.'s name and social security number.

(All in violation of Title 18, United States Code, Sections 1028A and 2).

14

<u>Count Eight</u>
(Aggravated Identity Theft)

37.     On or about December 16, 2008, in the Eastern District of Virginia, the defendant

ONWUHARA during and in relation to a violation of 18 United States Code, Section 1344, as

alleged in Count 5 did knowingly use, without lawful authority, a means of identification of

another person, J.W., to wit, J.W.'s name and social security number.

(All in violation of Title 18, United States Code, Sections 1028A and 2).

15

<u>Counts Nine through Twelve</u>
(Wire Fraud)

38.    Paragraphs 1 through 37 of this Indictment are re-alleged and incorporated as though fully set forth herein, as constituting and describing defendant's scheme and artifice to obtain property and money by means of material misrepresentations and fraudulent pretenses and representations.

39.    On or about the dates listed below, in the Eastern District of Virginia, and elsewhere, the defendant, ONWUHARA for the purpose of executing the aforesaid scheme and artifice to obtain money or property by fraud, and attempting to do so, did knowingly transmit by means of wire communications in interstate commerce certain writings, signs, signals and sounds, as set forth below:

| Count | Date | Wire Communications | From | To |
|-------|------|---------------------|------|-----|
| 9. | 11/27/2007 | Wire transfer of $94,000.00 from M.C.'s FTCU bank account to SunTrust account ending in 9341. | Oregon | Virginia |
| 10. | 12/7/2007 | Spoofcard phone call from ONWUHARA to USSFCU, in which ONWUHARA claimed to be USSFCU account holder R.S. | California | Virginia |
| 11. | 12/7/2007 | Wire transfer of $280,000.00 from R.S.'s USSFCU account to Woori Bank of Korea account ending in 1001. | Virginia | Korea |
| 12. | 12/19/2007 | Spoofcard phone call from ONWUHARA to SDFCU, in which ONWUHARA claimed to be SDFCU account holder J.W. | Maryland | Virginia |

(All in violation of Title 18, United States Code, Sections 1343 and 2)

16

## Count Thirteen
### (Money Laundering)

40.     Paragraphs 1 through 39 of this Indictment are re-alleged and incorporated as though fully set forth herein, as constituting and describing defendant's scheme and artifice to obtain property and money by means of material misrepresentations and fraudulent pretenses and representations.

41.     As recounted in Count Two, paragraphs 29 through 31, on or about December 7, 2007, in the Eastern District of Virginia and elsewhere, defendant, ONWUHARA did transmit, transfer and attempt to transmit and transfer funds, that is $280,000.00 in U.S. currency, from a place in the United States, that is R.S.'s USSFCU bank account, to a place outside the United States, that is an account with Woori Bank in Korea ending in 1001, knowing that the funds involved in the transfer and attempted transfer represented the proceeds of some form of unlawful activity and knowing that such transfer and attempted transfer was designed in whole or in part to conceal and disguise the location, source, ownership and control of the proceeds of the specified unlawful activity, to wit: the bank fraud scheme set forth in Counts 2 and 4.

(All in violation of Title 18, United States Code, Sections 1956(a)(2)(B)(i) and 2)

17

Count Fourteen
(Conspiracy to Launder Monetary Instruments)

42.      Paragraphs 1 through 41 of this Indictment are re-alleged and incorporated as though fully set forth herein, as constituting and describing defendant's scheme and artifice to obtain property and money by means of material misrepresentations and fraudulent pretenses and representations.

43.      From on or about May 2007 through August 2008, in the Eastern District of Virginia and elsewhere, the defendants, ONWUHARA, ORJINTA, NNABUE, and other previously-indicted and unindicted co-conspirators did knowingly combine, conspire, and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956 and Section 1957, to wit: to transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument or funds involving the proceeds of specified unlawful activity, that is, conspiracy to commit bank fraud, as set forth in Count 2 of the indictment, from a place in the United States to or through a place outside the United States, knowing that the funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity.

**MANNER AND MEANS**

44.      The manner and means of carrying out the conspiracy are set forth in paragraphs 12 through 23 of Count 1 of the indictment and are realleged and incorporated as though fully set forth herein.

18

45.     As a means of carrying out the conspiracy, on or about December 7, 2007, in the Eastern District of Virginia and elsewhere, defendant, ONWUHARA did transmit, transfer and attempt to transmit and transfer funds, that is $280,000.00 in U.S. currency representing proceeds from the bank fraud scheme described in Counts 2 and 4, from a place in the United States, that is R.S.'s USSFCU bank account, to a place outside the United States, that is an account at Woori Bank in Korea ending in 1001.

46.     As a further means of carrying out the conspiracy, between in or about December 2007 and in or about February 2008, money mules working for the conspiracy withdrew the $280,000.00 from the account ending in 1001 at the Woori Bank of Korea and after taking a cut transmitted the money to another co-conspirator in Indonesia who coordinated money mules across Asia for the conspiracy.

47.     As a further means of carrying out the conspiracy, from in or about February 2008 to in or about March 2008, the co-conspirator in Indonesia transferred $100,000.00 to ORJINTA and additional money to ONWUHARA.

48.     As a further means of carrying out the conspiracy, in or about March 2008, ORJINTA gave NNABUE $100,000.00 as his share of the proceeds from R.S.'s HELOC account at USSFCU.

(All in violation of Title 18, United States Code, Section 1956(h)).

19

<u>Counts Fifteen through Sixteen</u>
(Computer Fraud)

49.    Paragraphs 1 through 48 of this Indictment, which constitute and describe the defendants' scheme and artifice to obtain property and money by means of material misrepresentations and fraudulent pretenses and representations, are re-alleged and incorporated as though fully set forth herein.

50.    On or about December 7, 2008, in the Eastern District of Virginia and elsewhere, the Defendant, ONWUHARA using a computer with an Internet Protocol address of 75.192.189.135, did knowingly and with the intent to defraud, access a protected computer of USSFCU without authorization, and in excess of authorized access, and by means of such conduct furthered the intended scheme to defraud and obtained something of value, namely the use of funds in the USSFCU account holder R.S.'s account, as follows:

| Count | Victim | Date of Access | Time of Access |
|-------|--------|----------------|----------------|
| 15. | R.S. account at USSFCU | 12/7/2007 | 12:20:27 PM EST |
| 16. | R.S. account at USSFCU | 12/7/2007 | 12:21:22 PM EST |

(All in violation of Title 18, United States Code, Section 1030(a)(4) and 2)

20

## FORFEITURE NOTICE

51.      Pursuant to FED. R. CRIM. PRO. 32.2(a), the Defendant is hereby notified that,

upon conviction of the offense in violation of Title 18, United States Code, Section 1349 set

forth in Count Two of this Indictment, TOBECHI ONWUHARA shall forfeit to the United

States of America, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property

constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such

violation. The property to be forfeited includes, but is not limited to, at least $13 million in

United States currency as a money judgment for the proceeds of the offense.

52.      If any of the property described above, as a result of any act or omission of the

Defendant:

    a.      cannot be located upon the exercise of due diligence;

    b.      has been transferred or sold to, or deposited with, a third party;

    c.      has been placed beyond the jurisdiction of the court;

    d.      has been substantially diminished in value; or

    e.      has been commingled with other property which cannot be divided

            without difficulty,

then the United States of America shall be entitled to forfeiture of substitute property pursuant to

Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code,

Section 982(b)(1). All pursuant to 18 U.S.C. § 982(a)(2)(A).


NEIL H. MACBRIDE
United States Attorney

By: _____
John Eisinger
Assistant United States Attorney

A TRUE BILL:

Pursuant to the E-Government Act,
the original of this page has been filed
under seal in the Clerk's Office.

_____
FOREPERSON

21